UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------- X
                                        :

JEFFREY STOVER,                  :

                                   :

                    Petitioner,    :

                                   :

        - against -         :

                                   :

ROBERT ERCOLE, Superintendent,  :
Green Haven Correctional Facility,   :

                                   :

                  Respondent.   :
--------------------------------------------------- X

**OPINION AND ORDER**

08 Civ. 6737 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Petitioner Jeffrey Stover, proceeding pro se, filed a petition for a writ of habeas corpus (the "Petition") pursuant to section 2254 of Title 28 of the United States Code ("section 2254"), challenging his 2002 state-court conviction for Manslaughter in the First Degree and Gang Assault in the First Degree, following a jury trial.[1] Stover asserts eleven grounds for relief: (1) the trial court's exclusion of certain spectators from a portion of the trial violated his right to a public trial; (2) the trial court abused its discretion by deeming Stover a "persistent felony offender" and sentencing him as a class A-1 felon; (3) the prosecutor's summation

---

[1] *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed July 11, 2008 ("Petition").

was inflammatory; (4) the trial court's erroneous jury instruction with respect to

"intent" deprived Stover of a fair trial and Stover's trial counsel was ineffective for

failing to request a proper instruction; (5) the trial court's admission of evidence

depicting "bloody and gory scenes" deprived Stover of a fair trial; (6) excessive

sentence; (7) co-defendant's guilty plea allocutions should have been further

redacted prior to admission; (8) the trial court erred by failing to instruct the jury

that it could find witness Kenneth Mason to be an accomplice; (9) the trial court's

admission of evidence allowing for the inference that Stover had a criminal record

deprived him of a fair trial; (10) the cumulative effect of these errors deprived

Stover of a fair trial; and (11) Stover's trial counsel was ineffective for failing to

call an additional eyewitness and for failing to adequately impeach witness

Kenneth Mason.[2]  For the reasons discussed below, the Petition is denied.

## II.    BACKGROUND

### A.    Offense Conduct

On the evening of October 17, 2000, Jeffrey Stover was speaking to

several acquaintances on the corner of Third Avenue and Third Street in Mount

Vernon, New York.[3]  The group consisted of Stover, co-defendants Jermaine

---

[2]      *See id.* at 4-12.

[3]      *See* Respondent's Brief ("Resp't Br.") at 2.

2

Moorhead and Preston Felton, witness Kenneth Mason, and Larvelle Paylor.[4]  At

approximately 9:00 p.m., George Conklin walked by the group on his way to the

store.[5]  As Conklin passed by, Paylor said to Moorhead, "Let's get him," and they

followed Conklin down the street.[6]  Shortly thereafter, Paylor returned and

informed the group that Conklin had stabbed him in the stomach.[7]  Stover,

Moorhead and Felton decided to pursue Conklin and Mason followed.[8]

  As the group caught up to Conklin, Felton struck him with a bottle

causing him to fall down.[9]  Stover, Moorhead and Felton repeatedly kicked and

punched Conklin with the help of a fourth individual, Frank Davis, who had joined

the group.[10]  Stover stabbed Conklin multiple times with his pocket knife.[11]  At

some point, Stover picked Conklin up and slammed him down on the pavement.[12]

---

[4] *See id.*

[5] *See id.* at 2-3.

[6] *See id.* at 3.

[7] *See id.*

[8] *See id.*

[9] *See id.*

[10] *See id.*

[11] *See id.*

[12] *See id.*

3

The assailants then fled the scene.[13]  As they did so, Mason informed Stover that he had Conklin's blood on his boots.[14]

Several minutes later, police officers and paramedics responded to a 911 call and found Conklin unconscious.[15]  The paramedics rushed Conklin to Jacobi Hospital but he failed to regain consciousness and died two days later.[16]  An autopsy revealed that Conklin had a fractured skull, stab wounds to his face, arms, thighs and chest.[17]  Conklin ultimately died from swelling of the brain.[18]

On November 10, 2000, Mason was arrested on a separate matter and informed the police that he had witnessed Conklin's assault.[19]  He identified each of the assailants, informed the detectives of Stover's bloody boots and provided Stover's address.[20]  Detectives subsequently arrested Stover, Moorhead, Felton and

---

[13]     *See id.*

[14]     *See* Petitioner's Appellate Brief ("Pet'r Appellate Br."), Ex. A to Petition, at 5.

[15]     *See* Resp't Br. at 4.

[16]     *See id.* at 4-5.

[17]     *See id.* at 6.

[18]     *See id.*

[19]     *See id.* at 7.

[20]     *See id.*

Davis and charged them each in connection with the assault.[21]  On November 11, 2000, police officers executed a search warrant at Stover's apartment and recovered the blood-stained boots.[22]  Subsequent DNA analysis revealed that Stover's boots were stained with Conklin's blood.[23]

### B.    Procedural History

#### 1.    Trial

Stover pleaded not guilty to an indictment charging him with Manslaughter in the First Degree and Gang Assault in the First Degree.  The trial court denied Stover's pre-trial motions seeking suppression of both physical evidence and identification testimony.[24]  Stover did not appeal these pre-trial orders.

At trial, Mason appeared as the prosecution's primary witness.[25] Mason testified that he witnessed Stover and the others assault Conklin and that after the attack, he informed Stover of the blood on his boots.[26] During a portion

---

[21]    See id.

[22]    See id. at 7-8.

[23]    See id.

[24]    See 5/22/01 Decision and Order, Ex. 2 to Resp't Br.

[25]    See Pet'r Appellate Br. at 6-8.

[26]    See Resp't Br. at 3; Pet'r Appellate Br. at 7.

of Mason's testimony, several members of Stover's family entered the courtroom.[27]

After noticing that the presence of these spectators resulted in less candid answers

by Mason, the judge cleared the courtroom and questioned Mason.[28]  Mason

informed the judge that these spectators had confronted him on the street and told

him it was not right that he was testifying.[29]  The judge ordered the exclusion of

those particular spectators for the remainder of Mason's testimony but allowed

them to return for the rest of the trial.[30]  The prosecution also introduced — and the

court allowed — photographs of Conklin's autopsy in order to assist the medical

examiner's testimony.[31]

On July 16, 2002, the jury found Stover guilty of First Degree

Manslaughter and First Degree Gang Assault.[32]  The court deemed Stover a

"persistent felony offender" and sentenced him to two concurrent terms of sixteen

years to life in prison.[33]

---

[27]    *See* Resp't Br. at 9.

[28]    *See id.* at 11.

[29]    *See id.* at 11-12.

[30]    *See id.* at 13.

[31]    *See id.* at 38.

[32]    *See* Petition at 1.

[33]    Resp't Br. at 30.

6

### 2.      Direct Appeal

On September 20, 2004, Stover appealed his conviction to the Appellate Division, Second Department.[34]  In his primary brief on appeal, Stover argued five grounds for reversal. *First*, he asserted that the trial court erred by failing to instruct the jury that they could have found Mason to be an accomplice. *Second*, Stover argued that the trial court should not have allowed his co-defendant's guilty plea allocutions into evidence without further redaction. *Third*, Stover argued that the trial court abused its discretion by deeming him a "persistent felony offender." *Fourth*, Stover argued that his sentence was excessive. *Finally*, Stover argued that the prosecution's summation was inflammatory.[35]

In a supplemental pro se brief, Stover asserted five additional grounds for reversal.[36] *First*, Stover argued that the exclusion of his family members from a portion of Mason's testimony deprived him of his right to a public trial. *Second*, Stover argued that his probation officer's testimony allowed the jury to infer that Stover had a criminal record. *Third*, Stover argued that the prejudicial effect of the autopsy photographs outweighed their probative value. *Fourth*, Stover argued that

---

[34]      *See* Pet'r Appellate Br.

[35]      *See id.* at 6-19.

[36]      *See* Petitioner's Supplemental Appellate Brief ("Pet'r Supp. Appellate Br."), Ex. B to Pet.

the trial court gave the jury an erroneous instruction with respect to Stover's intent and that his trial counsel was ineffective for failing to request a proper instruction. *Fifth*, Stover argues that the cumulative effect of these errors deprived him of a fair trial.[37]

On January 23, 2007, the Second Department unanimously affirmed Stover's conviction.[38]  It held that the limited exclusion of certain members of Stover's family was justified by consideration of Mason's safety and his "clear reluctance" to testify in their presence.[39]  It also found that the trial court properly corrected the prosecutor's characterization of Stover's intent during summation and that the prosecutor's discussion of the medical examiner's testimony was fair comment on the evidence.[40]  The Second Department further held that the autopsy photographs were sufficiently probative and that their admission did not prejudice Stover.[41]  With respect to the jury instruction, the Second Department found that it was "not in any way improper" and that trial counsel's failure to request a different

---

[37]      *See id.* at 1-20.

[38]      *See People v. Stover*, 36 A.D.3d 837 (2d Dept. 2007).

[39]      *Id.* at 837.

[40]      *See id.* at 837-38.

[41]      *See id.*

8

instruction did not constitute ineffective assistance of counsel.[42]  Finally, the court concluded that the trial court's decision to sentence Stover as a "persistent felony offender" to a term of sixteen years to life was neither excessive nor an abuse of discretion.[43]  The Second Department deemed Stover's remaining contentions unpreserved for review and declined to reach them.[44]

On March 12, 2007, Stover sought leave to appeal to the New York Court of Appeals on the following four grounds: (1) the inflammatory summation by the prosecutor; (2) the failure of the trial court to instruct the jury of their right to deem Mason an accomplice; (3) the admission of the guilty plea allocutions; and (4) the excessive sentence.[45]  In a hand-written letter dated March 23, 2007, Stover requested that the Court of Appeals also consider the five additional grounds for reversal asserted in his supplemental pro se brief to the Second Department.[46]  On July 12, 2007, the Court of Appeals denied Stover's request for leave to appeal.[47]

---

[42]     *Id.*

[43]     *Id.*

[44]     *See id.*

[45]     *See* Petitioner's 3/12/07 Application for Leave to Appeal ("Pet'r App. for Leave to Appeal"), Ex. 11 to Resp't Br., at 1.

[46]     *See* Petitioner's 3/23/07 Handwritten Letter ("Pet'r Letter"), Attached to Petitioner's 5/19/09 Reply Affidavit.

[47]     *See People v. Stover*, 9 N.Y.3d 869 (2007).

### 3.    Motion to Vacate Judgment

On May 3, 2005, while his direct appeal was pending, Stover filed a pro se Motion to Vacate Judgment pursuant to New York Criminal Procedure Law section 440.10.[48]  Stover claimed that the prosecutor knowingly misrepresented to the jury that Mason was not an accomplice and that Mason did not receive leniency in exchange for his testimony.[49]  Stover additionally claimed that his trial counsel was ineffective for failing to impeach Mason and for failing to call an eyewitness who had been unable to identify Stover as an assailant.[50]

On July 15, 2005, the County Court of the State of New York, Westchester County, denied Stover's Motion to Vacate in its entirety.[51]  The court held that Stover's claims were based on proceedings established on the record, could be adequately resolved on direct appeal and therefore were not subject to collateral review under New York Criminal Procedure Law section 440.10(2)(c).[52] Alternatively, the court held that Stover's claims amounted to "conclusory

---

[48]      *See* Petitioner's Notice of Motion to Vacate, Ex. 14 to Resp't Br.; N.Y. Crim. Proc. Law § 440.10 (2011).

[49]      *See* Notice of Motion to Vacate at 1-2.

[50]      *See id.* at 2.

[51]      *See* 7/15/05 Decision and Order, Ex. 16 to Resp't Br.

[52]      *See id.* at 2.

assertions inadequate to establish" prosecutorial misconduct or ineffective assistance of counsel.[53]  On March 15, 2006, the Appellate Division, Second Department denied Stover's application for leave to appeal the order.[54]

## III.   LEGAL STANDARDS

### A.    Section 2254

#### 1.    Standard of Review

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that a federal court may hear a petition for habeas corpus relief from a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[55] The statute further provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[56]

---

[53]    *Id.*

[54]    *See* Respondent's Affidavit in Opposition to Petition for a Writ of Habeas Corpus, at 11.

[55]    28 U.S.C. § 2254(a).

[56]    28 U.S.C. § 2254(d).

11

A state court's decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than the [the Supreme Court] has on a set of materially indistinguishable facts."[57]  A decision is an "unreasonable application of federal law" if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."[58]  The Supreme Court has recently held that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[59]  Thus, to be "unreasonable," the state court's decision must have been "objectively unreasonable"[60] rather than merely incorrect or erroneous.[61]  "[C]learly established" federal law refers to holdings — as opposed to dicta — "set forth by the Supreme Court at the time the state court renders its decision."[62]

---

[57]     *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority as to Part II of the opinion).

[58]     *Id.* at 413.

[59]     *See Wood v. Allen*, — U.S. — , 130 S. Ct. 841, 849 (2010).

[60]     *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

[61]     *See Renico v. Lett*, — U.S. — , 130 S. Ct. 1855, 1862 (2010).

[62]     *Lockyer,* 538 U.S. at 71-72 (citing *Williams,* 529 U.S. at 405, 412-13).

Finally, under section 2254(e)(1), a determination of a factual issue by a State court "shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."[63]

### 2. Exhaustion Requirement[64]

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the state."[65] In order to satisfy the exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.'"[66] This may be done by making an "explicit constitutional argument," "relying on state or federal cases that employ a constitutional analysis," asserting a claim that calls to mind a

---

[63]    28 U.S.C. § 2254(e)(1).

[64]    Section 2244(d)(1) of Title 28 of the United States Code provides that "a state prisoner must file a habeas petition in federal court within one year from the date his conviction becomes final." The one-year limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In the present case, Stover sought federal habeas relief within the proper time frame as his petition was filed on July 11, 2008, less than one year after the New York Court of Appeals denied him leave to appeal on July 12, 2007.

[65]    28 U.S.C. § 2254(b)(1)(A).

[66]    *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

13

specific constitutional right or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[67] In New York, a prisoner may exhaust certain claims not raised on direct appeal through collateral proceedings.[68] Whether on direct appeal or in a collateral proceeding, however, the claim must be presented to "the highest state court from which a decision can be had."[69] If, in an application for leave to appeal, a petitioner clearly directs the highest court to consider claims raised in his or her appellate briefs, such claims are considered exhausted even if a petitioner does not discuss them directly.[70]

        Prior to the AEDPA, district courts were required to dismiss any

---

[67]    *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[68]    *See, e.g., Figueroa v. Portuondo*, 96 F. Supp. 2d 256, 276 (S.D.N.Y. 1999) (citing *Klein*, 667 F.2d at 282; *Johnson v. Metz*, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10)).

[69]    *Daye*, 696 F.2d at 191 n.3.

[70]    *Compare Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (finding claims unexhausted where habeas petitioner attached his appellate brief to the application for leave to appeal but only referenced it generally), *with Morgan v. Bennett*, 204 F.3d 360, 369-70 (2d Cir. 2000) (finding claims exhausted where habeas petitioner in an attached letter expressly directed the New York State Court of Appeals to consider claims in his appellate brief and supplemental pro se brief).

petition containing unexhausted claims.[71]  Under the AEDPA amendments,

however, district courts have the discretion to deny a petition on the merits

"notwithstanding the failure of the applicant to exhaust the remedies available in

the courts of the State."[72]  In the exercise of this discretion, many district courts

have chosen to deny unexhausted claims that are "patently frivolous."[73]  The

Supreme Court has noted that "plainly meritless" claims should be denied on the

merits rather than dismissed for failure to exhaust.[74]

### 3.    Procedural Bar

Federal courts may not review a habeas claim if it was defaulted in

state court pursuant to an independent and adequate state procedural rule.[75]  This

rule allows "state courts . . . to address those claims in the first instance."[76]  For a

claim to be barred from habeas review, the state court "must actually have relied on

---

[71]    *See Rose v. Lundy*, 455 U.S. 509, 522 (1989) (dismissing entire habeas petition containing some exhausted and some unexhausted claims in the interest of comity).

[72]    28 U.S.C. § 2254(b)(2).

[73]    *See Naranjo v. Filion*, No. 02 Civ. 5549, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases).

[74]    *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

[75]    *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

[76]    *Id.* at 732.

the procedural bar as an independent basis for its disposition of the case."[77]  In general, for a habeas claim to be procedurally barred, reliance on the state procedural rule must be "clear from the face of the opinion."[78]  If a habeas petitioner fails to present the state courts with a federal constitutional issue but can no longer bring the claim under state procedural rules, a federal habeas court should consider the claim exhausted but procedurally barred.[79]

If the state court holding contains a statement that a claim is procedurally barred, but reaches the merits in the alternative, habeas review is inappropriate.[80]  In contrast, if the state court uses language such as "the claims are either unpreserved or without merit," the claims are subject to federal court review.[81]  Finally, if the state court issues a ruling without opinion and both procedural and substantive arguments are made in the briefs, the Second Circuit has held that the decision is presumed to be on state procedural grounds and not

---

[77]     *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (quotation marks omitted).

[78]     *Coleman*, 501 U.S. at 735.

[79]     *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

[80]     *See Harris*, 489 U.S. at 264 n.10.

[81]     *Jimenez v. Walker*, 458 F.3d 130, 133, 145 (2d Cir. 2006).

16

subject to habeas review.[82]  Even if a petitioner's claims are procedurally barred under state law, he may still obtain habeas review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[83]

### B.      Sixth Amendment Right to a Public Trial

The Sixth Amendment guarantees a criminal defendant's right to a "speedy and public trial . . . ."[84]  The Fourteenth Amendment extends this right to criminal defendants in state court.[85]  The Supreme Court has held, however, that this right is not absolute and "'may give way in certain cases to other rights and interests . . . .'"[86]  In *Waller v. Georgia*, the Supreme Court announced the following four standards for courts to apply before excluding the public from a criminal trial:

> (1) [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure

---

[82]     *See id.* at 139-40.

[83]     *Coleman,* 501 U.S. at 750.

[84]     U.S. Const. amend. VI.

[85]     *See In re Oliver*, 333 U.S. 257, 273 (1948).

[86]     *Presley v. Georgia*, — U.S. — , 130 S. Ct. 721, 724 (2010) (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984)).

must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, (4) and it must make findings adequate to support the closure.[87]

With respect to the first and second prongs, the gravity of the advanced interest purported to be threatened must be proportional to the extent of the courtroom closure.[88] When a trial judge excludes only select members of the audience for a limited portion of the trial there need only be a "substantial reason" to do so in lieu of the "overriding interest" requirement.[89] For such a partial closure, this burden is "not a heavy one"[90] and a witness's articulation of a "generalized fear" for his or her safety is sufficient.[91] Although the Supreme Court has noted a special concern for ensuring the attendance of a defendant's family members,[92] where a defendant does not request that his family members be permitted to stay he cannot later argue that their exclusion constituted an overly

---

[87]    *Waller*, 467 U.S. at 48.

[88]    *Ayala v. Speckard*, 131 F.3d 62, 70 (2d Cir. 1997).

[89]    *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992).

[90]    *Brown v. Kuhlmann*, 142 F.3d 529, 538 (2d Cir. 1998).

[91]    *Bowden v. Keane*, 237 F.3d 125, 130 (2d Cir. 2001) (holding that an undercover officer's fear of retaliation if he were identified justified closing the entire courtroom for the duration of his testimony).

[92]    *See Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir. 1994) (discussing *In re Oliver*, 333 U.S. 257 (1948)).

18

broad closure.[93]

With respect to the third prong, a trial judge who partially closes a courtroom — an alternative to full closure — is not required to consider additional alternatives sua sponte.[94] Moreover, a criminal defendant who fails to request a more limited alternative to partial closure has no basis for relief on this ground.[95]

With respect to the fourth prong, the "quality and extent of the evidence that will support a closure will vary . . . depending upon the scope of the closure."[96] Indeed, the Second Circuit has upheld narrow closures even where the evidence was "'neither entirely accurate nor particularly compelling.'"[97] So long as an appellate court can "glean" competent evidence from the record that justifies closure, the fourth prong will be satisfied.[98]

### C.   Excessive Sentence

If a prisoner's sentence is within the range prescribed by state law, the claim that the sentence is excessive will not present a basis for federal habeas

---

[93]   *See Brown*, 142 F.3d at 538 (citing *Ayala*, 131 F.3d at 72).

[94]   *See Ayala*, 131 F.3d at 70-71.

[95]   *See id.* at 71-72.

[96]   *Bowden*, 237 F.3d at 131-32.

[97]   *Id.* (quoting *Brown v. Kuhlmann*, 142 F.3d 529, 538 (1998)).

[98]   *See id.* at 132; *see also Woods*, 977 F.2d at 77-78.

relief.[99]  Such claims do not present a federal constitutional question under the

Eighth Amendment.[100]  Section 70.10 of the New York Penal Law defines a

"persistent felony offender" as a defendant who stands convicted of a felony after

having previously been convicted of two or more separate felonies.[101]  A court may

sentence a persistent felony offender to a term of imprisonment authorized for a

class A-1 felony in lieu of the term authorized for the crime for which the

defendant is convicted.[102]

---

[99]     See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also
Owens v. Conway, No. 10 Civ. 3183, 2010 WL 3290980, at *2 (S.D.N.Y. Aug. 11,
2010).

[100]    See White, 969 F.2d at 1383; see also Sims v. Ercole, No. 09 Civ.
4398, 2010 WL 1685434, at *10 (S.D.N.Y. Apr. 23, 2010); Bellavia v. Fogg, 613
F.2d 369, 373-74 n.7 (2d Cir. 1979) (holding that sentencing statute is properly the
province of the state legislature and long mandatory sentence imposed pursuant to
statute did not constitute cruel and unusual punishment).

[101]    N.Y. Penal Law § 70.10(1).

[102]    Section 70.10 also authorizes a trial judge to consider the "history and
character" of the defendant and the "nature and circumstances" of the crime when
deciding the sentence. N.Y. Penal Law § 70.10(2). In Besser v. Walsh, 601 F.3d
163 (2d Cir. 2010), the Second Circuit held that sentences pursuant to this
provision violated clearly established Supreme Court precedent, see Apprendi v.
New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004),
because it required a judge — not a jury — to make factual determinations prior to
imposing an enhanced sentence. However, upon rehearing, the Second Circuit
sitting en banc upheld the sentencing law as constitutional. See Portalatin v.
Graham, 624 F.3d 69 (2d Cir. 2010) (en banc) (holding that N.Y. Penal Law §
70.10(2) was constitutional because the New York Court of Appeals had construed
the statute as permitting a trial judge to impose an A-1 felony sentence based solely

### D.   Prosecutorial Misconduct

It is well-settled that a writ of habeas corpus will not issue on the basis of improper prosecutorial comments made during summation unless the comments "'so infected the trial with unfairness as to make the conviction a denial of due process.'"[103]  To result in a denial of due process, the remarks must be more than mere "trial error."[104]  They must constitute "egregious misconduct"[105] resulting in "actual prejudice."[106]  Moreover, a "criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding."[107]  Relevant factors in this analysis include the severity of the prosecutor's misconduct, the measures adopted to cure any possible prejudice, and

---

upon undisputed recidivism without requiring additional judicial fact-finding).

[103]     *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  *Accord Rao v. Artuz*, No. 97-2703, 1999 WL 980947, at *2 (2d Cir. Oct. 22, 1999).

[104]     *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998).

[105]     *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002) (quotation marks omitted).

[106]     *Tankleff*, 135 F.3d at 252.

[107]     *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)).

21

the certainty of conviction absent the challenged remarks.[108]

### E.    Improper Jury Instruction

Where a habeas petitioner alleges an error in the jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."[109]  As a threshold matter, a federal habeas court must determine whether the petitioner was deprived of a proper jury instruction.[110]  However, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."[111]  Rather, the ultimate question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."[112]

### F.    Admission of Autopsy Photographs

---

[108]    *See id.*; *see also Faison v. McKinney*, No. 07 Civ. 8561, 2009 WL 4729931, at *8 (S.D.N.Y. Dec. 10, 2009).

[109]    *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (quotation marks omitted).

[110]    *See Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) ("[A] finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights.").

[111]    *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

[112]    *Cupp*, 414 U.S. at 147.

22

In general, federal courts are not to review the admissibility of evidence in state criminal proceedings to determine whether the court correctly applied state law.[113]   Accordingly, errors of state law are generally not cognizable grounds for habeas relief.[114]   Claims of evidentiary error will support a writ of habeas corpus "only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair* trial'"[115] so as to deny the petitioner his or her due process rights under the Fourteenth Amendment.[116]   Only erroneously admitted evidence that was "'critical, crucial, [or] highly significant'" to the outcome of the trial will constitute a deprivation of a fundamentally fair trial.[117]   If prejudicial evidence is "probative of [an] essential element of the case, its admission does not violate the defendant's right to due process."[118]   Under New York law, photographs of the corpses of homicide victims are admissible so long as they tend to prove or

---

[113]   *See Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

[114]   *See Estelle*, 502 U.S. at 67-68.

[115]   *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)) (emphasis in original).

[116]   *See United States v. Agurs*, 427 U.S. 97, 108 (1976).

[117]   *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)).

[118]   *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998).

disprove a material fact in issue, even if the photographs depict gruesome subject matter.[119]

## G.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that a defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence."[120] Included in that guarantee is the right to effective assistance of counsel.[121] The Supreme Court established the standard for ineffective assistance of counsel in *Strickland v. Washington*, which held that a petitioner must prove both (1) that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[122]

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular

---

[119]    *See People v. Pobliner*, 32 N.Y.2d 356, 369-70 (1973).

[120]    U.S. Const. amend. VI.

[121]    *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases).

[122]    466 U.S. 668, 688 (1984).

case."[123]  A defendant "must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'"[124]

"Under the second prong — the prejudice prong — a 'reasonable probability' of a

different result is a 'probability sufficient to undermine confidence in the

outcome.'"[125]

## IV.    DISCUSSION

### A.    Petitioner's Sixth Amendment Right to a Public Trial

Stover claims that the state court deprived him of his Sixth

Amendment right to a public trial when the judge excluded five of his friends and

family from the courtroom for a portion of Mason's testimony.  Stover appealed

this claim directly to the New York State Appellate Division, Second

Department.[126]  In so doing, he cited the leading Supreme Court decision on the

issue and framed his argument in terms of the United States Constitution.[127]  The

---

[123]    *Id.* at 689-90.

[124]    *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[125]    *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quoting *Strickland*, 466 U.S. at 694).

[126]    *See* Pet'r Supp. Appellate Br. at 1.

[127]    *See id.* at 2.

25

Second Department dismissed this claim on the merits.[128]  Stover sought further review of this claim in the New York State Court of Appeals,[129] but the highest court denied his application.  Therefore, this claim is neither unexhausted nor procedurally barred and is entitled to review under the AEDPA standard.

Stover argues that the state trial court's partial closure of the courtroom did not satisfy any of the four *Waller* requirements.[130]  *First*, Stover claims that the court failed to advance an overriding interest that was likely to be prejudiced.  In support of this claim, Stover asserts that prior to the prosecutor and the trial judge questioning him, Mason failed to articulate any basis for his fear.[131]  However, the case law does not require the witness to do so.  In *Guzman v. Scully* — which Stover cites in support — the Second Circuit held that a trial court's complete reliance upon the representations of the prosecutor regarding a witness's

---

[128]    *See People v. Stover*, 36 A.D.3d 837 (2d Dept. 2007).

[129]    Although the application for leave to appeal filed by Stover's appellate attorney only sought leave on four distinct grounds, *see* Pet'r App. for Leave to Appeal at 1, Stover's handwritten letter to the New York State Court of Appeals requested that the highest court also consider the claims asserted in his supplemental appellate brief, which included the alleged deprivation of his Sixth Amendment right to a public trial.  *See* Pet'r Letter.  Therefore, under *Morgan v. Bennett*, 204 F.3d 360, 369-70 (2d Cir. 2000), Stover's claim was properly exhausted.

[130]    *See* Petition at 4-8.

[131]    *See id.* at 4-5.

26

fear for his safety was insufficient to justify closure when the judge failed to question the witness directly.[132]  In this case, by contrast, the trial judge questioned Mason directly and Mason responded that he "was nervous to testify"[133] in the presence of the audience members because they had been "hostile" and "threatening" to him on the street.[134]  While Mason did not articulate that the audience members expressly threatened him, his generalized fear of retaliation based upon the hostile encounter on the street with the audience members satisfies the reduced burden required for a partial closure.[135]  Therefore, the state trial court's decision complied with the first *Waller* requirement.

*Second*, Stover asserts that the closure order was broader than necessary to protect the interest in the witness's safety and candor.[136]  However, the extent of the closure was directly proportional to the interest the court sought to protect.  After testifying candidly the previous day, Mason's testimony became less forthcoming in the presence of the five newly-arrived audience members.[137]  After

---

[132]   *See* 80 F.3d 772, 775-76 (2d Cir. 1996).

[133]   Trial Transcript ("Trial Tr.") at 379.

[134]   *Id.* at 377-78.

[135]   *See Bowden*, 237 F.3d 125.

[136]   *See* Petition at 5-7.

[137]   *See* Trial Tr. at 338-51, 366-68.

directly questioning Mason, the trial judge barred only the five audience members for the balance of Mason's testimony.[138]  The judge allowed them to observe the remainder of the trial.[139]  This closure did not limit Stover's right to a public trial beyond the minimum necessary to elicit candid testimony from Mason. Furthermore, Stover at no point requested that his family members be permitted to stay and, therefore, his argument that their exclusion was overly broad is unavailing.[140]  Thus, the trial court reasonably applied the second *Waller* requirement.

*Third*, Stover argues that — as an alternative to partial closure — the trial judge could have seated the family members at the back of the courtroom.[141] However, Stover did not make this argument during trial and, in any event, the trial judge was not required to consider additional alternatives to partial closure.[142] Thus, the state court satisfied the third *Waller* prong.

*Fourth*, Stover argues that the trial court failed to "substantiate" Mason's assertions that the excluded audience members made him reluctant to

---

[138]   *See id.* at 374-79, 385-86.

[139]   *See id.* at 385-86.

[140]   *See Brown*, 142 F.3d 529.

[141]   *See* Petition at 7.

[142]   *See Ayala*, 131 F.3d 62.

28

testify.[143]  Stover, however, cites no precedent that stands for the proposition that a trial court must "substantiate" a witness's claim that he felt threatened by certain audience members before excluding those audience members from the courtroom. Mason stated on the record that he felt threatened by these audience members after encountering them on the street.[144]  While this statement does not prove that he was actually in danger, there is ample evidence in the record for a reviewing court to "glean" the findings necessary to justify partial closure as required under the fourth *Waller* prong.[145]  Therefore, the partial exclusion of the audience members did not deprive Stover of his Sixth Amendment right to a public trial.

**B.    Excessive Sentence Claim**

Stover argues that the trial court abused its discretion by deeming him a persistent felony offender and sentencing him as an A-1 felon to sixteen years to life in prison.[146]  Although this claim was exhausted and adjudicated on the merits at the state level,[147] the sentence falls well within the statutory range set by the state

---

[143]    *See* Petition at 7–8.

[144]    *See* Trial Tr. at 379.

[145]    *Bowden*, 237 F.3d at 132.

[146]    *See* Petition at 9-10, 12-13.

[147]    *See People v. Stover*, 36 A.D.3d 837 (2nd Dept. 2007); *People v. Stover*, 9 N.Y.3d 869 (2007).

legislature. Therefore, the claim does not present a cognizable constitutional issue available for federal habeas review.

The state trial court determined Stover to be a persistent felony offender.[148] As Stover readily admits, he had previously served two separate terms of imprisonment for two distinct felony convictions.[149] Thus, the trial judge correctly found him to be a persistent felony offender.

Both Gang Assault in the First Degree and Manslaughter in the First Degree are classified as class B violent felonies.[150] As a persistent felony offender, Stover was subject to a maximum indeterminate term of life in prison and a minimum determinate term ranging from fifteen years to twenty-five years.[151] Stover's sentence of sixteen years to life in prison was within the statutory range. Despite Stover's assertion that the pre-sentence report did not recommend a life sentence, the trial judge's sentence was consistent with state law, and Stover's claim fails to present a reviewable federal question.

## C.   Prosecutorial Misconduct

---

[148]   *See* N.Y. Penal Law § 70.10(1).

[149]   *See* Petition at 9.

[150]   *See* N.Y. Penal Law §§ 120.07, 125.20.

[151]   *See id.* §§ 70.00(2)(a), 70.00(3)(a)(I), 70.10(2).

Stover presents two claims of prosecutorial misconduct for federal habeas review. *First*, he argues that the prosecutor wrongly characterized the requisite intent for a charge of manslaughter when he told the jury during his summation that Stover intended to kill the victim.[152]  *Second*, he argues that the prosecutor mischaracterized the expert medical testimony regarding the blows the victim sustained to his head.[153]  Both statements, Stover asserts, were inflammatory and deprived him of a fair trial.

### 1.    The Evidence Characterization Claim Is Procedurally Barred

Stover appealed both claims to the Appellate Division, Second Department, which rejected them on the merits.[154]  However, Stover failed to appeal the issue of the prosecutor's characterization of the expert testimony to the New York Court of Appeals.[155]  Because Stover can no longer appeal this claim to

---

[152]     *See* Petition at 10.

[153]     *See id.* at 11.

[154]     *See People v. Stover*, 36 A.D.3d 837 (2d Dept. 2007).

[155]     *See* Pet'r App. for Leave to Appeal, at 1.  Although in his handwritten letter Stover directed the New York State Court of Appeals to also consider the claims raised in his pro se supplemental appellate brief, Stover did not raise the claim of prosecutorial misconduct in his supplemental brief.  *See* Pet'r Supp. Appellate Br.

the New York Court of Appeals,[156] and state court collateral review is likewise

unavailable,[157] state remedies no longer exist.  Stover makes no showing of "cause"

for the default nor any "prejudice" resulting therefrom as required to overcome the

procedural bar.[158]  Thus, this claim is exhausted but nonetheless procedurally

barred from federal habeas review.[159]

### 2. The Intent Characterization Claim Does Not Amount to a Deprivation of Due Process

Stover argues that the prosecutor's statement during summation —

that Stover's "goal that night" was to "beat this man to death"[160] — was improper

and should have resulted in a mistrial.  However, mere trial error is insufficient to

establish a due process violation.[161]  Although the statement was potentially

inappropriate — as found by the trial court — the curative instruction given by the

trial judge coupled with the independent evidence of Stover's guilt precluded any

---

[156]    *See* N.Y. Ct. Rules § 500.20(a), (d).

[157]    *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (barring collateral review if claim could have been raised on direct appeal but was not).

[158]    *See Coleman*, 501 U.S. at 750.

[159]    *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994); *Grey*, 933 F.2d at 120-21.

[160]    *See* Trial Tr. at 874-75.

[161]    *See Tankleff*, 135 F.3d at 252.

32

actual prejudice.

Stover's counsel objected promptly to the prosecutor's comments and the trial court sustained the objection.[162] The judge went on to instruct the jury that "[t]he individuals are not indicted for murder" but rather "for manslaughter [in] that they intended to cause serious injury to another person . . . ."[163] The jury charge further clarified the requisite level of intent.[164] Stover points to no evidence that the jury disregarded these instructions or employed the inference that Stover intended to cause the victim's death.

In addition, Mason identified Stover as Conklin's assailant. Although Stover argues that the jury "could easily disbelieve him,"[165] the fact remains that the jury did not do so. Furthermore, there is nothing to suggest that the jury credited Mason based upon the prosecutor's comments at summation. Stover's boots, which were stained with Conklin's blood and produced at trial, corroborated Mason's testimony. Thus, it is nearly certain that the jury would have convicted Stover in the absence of the prosecutor's comments at summation. Accordingly,

---

[162]    *See* Resp't Br. at 33.

[163]    *See* Trial Tr. at 876.

[164]    *See id.* at 974-75.

[165]    Pet'r Appellate Br. at 19.

Stover has not carried his burden of proving that the alleged prosecutorial misconduct "so infected the trial with unfairness as to make the conviction a denial of due process."[166]

### E.    Improper Jury Instruction

Stover claims that the jury instruction required the jury to make the mandatory presumption that he intended the ordinary consequences of his voluntary acts, thus violating the rule prescribed by the Supreme Court in *Sandstrom v. Montana*.[167]  Stover's argument is without merit.  The instruction given by the trial court at no point states that the jury should make any such presumption.[168]  Furthermore, the decision in *Sandstrom* rested in large part on the fact that the instruction in that case left the impression that the jury had no choice but to infer intent if it found ordinary consequences to have resulted from the

---

[166]    *Donnelly*, 416 U.S. at 643.

[167]    *See* 442 U.S. 510 (1978) (holding that a jury instruction stating that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" violates the Fourteenth Amendment's requirement that the prosecution prove every element of a crime beyond a reasonable doubt because a reasonable juror could interpret that instruction as requiring a mandatory presumption of intent).

[168]    *See* Trial Tr. at 974-80.

defendant's voluntary acts.[169]  By contrast, in the instant case, the trial judge made it abundantly clear on more than one occasion that intent was a question of fact for the jury for which the prosecution had the burden of proof.[170]  Thus, Stover has failed to show that he was deprived of his Fourteenth Amendment right to due process of law or that he was even deprived of a proper jury instruction.

Stover also argues that his trial counsel's failure to object to the jury instruction given by the trial court deprived him of effective assistance of counsel under *Strickland v. Washington*.  However, because the jury instruction was proper, Stover fails to establish that his trial counsel's representation fell below an objective standard of reasonableness.

### F.    Admission of Autopsy Photographs

Stover claims that the admission of the autopsy photographs deprived him of a fair trial.[171]  In particular, Stover argues that because only the identity of

---

[169]    *See Sandstrom*, 442 U.S. at 515 ("[The jury was] not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it.  It is clear that a reasonable juror could easily have viewed such an instruction as a mandate.").

[170]    *See* Trial Tr. at 977-80 ("Therefore, in this case, from the facts you find to been [sic] proven, you must decide whether or not you can infer beyond a reasonable doubt that the defendant had the intent required for the commission of this crime.").

[171]    *See* Petition at 12.

the assailant — rather than the cause of death of the victim — was at issue at trial, the prejudicial effect of the "gruesome" photographs outweighed their probative value.[172]  However, as the Appellate Division noted, the photographs were relevant because they corroborated Mason's testimony regarding how the wounds occurred. Therefore, under New York law, the photographs were admissible even though they were gruesome.

Even conceding, *arguendo*, that the state trial court erred in admitting the autopsy photographs, the error would not form the basis for federal habeas relief.  Aside from the photographs, the weight of evidence against Stover was substantial.  Stover had the victim's blood on his boots and Mason identified him as the assailant.  Thus, the photographs — even if erroneously admitted — were not "'critical, crucial, [or] highly significant'"[173] to Stover's conviction and their admission did not deprive him of a "'fundamentally fair trial.'"[174]

## G.    Stover's Additional Ineffective Assistance of Counsel Claims are Procedurally Barred

Stover argues that his trial counsel deprived him of effective assistance of counsel in two additional ways.  *First*, he claims that his trial counsel

---

[172]    Pet'r Supp. Appellate Br. at 9.

[173]    *Collins*, 755 F.2d at 19 (quoting *Nettles*, 677 F.2d at 414-15).

[174]    *Zarvela*, 364 F.3d at 418 (quoting *Rosario*, 839 F.2d at 925).

failed to impeach Mason with evidence that reduced Mason's credibility.[175]
*Second*, despite being in possession of a statement by a witness who did not
identify Stover as the assailant, his trial counsel failed to investigate the facts
further or to call the witness at trial.[176]  Stover raised these claims in his section
440.10 Motion to Vacate the Judgment but failed to raise them on direct appeal.
The state court rejected both claims under section 440.10(2)(c),[177] which bars
collateral review of claims that are "well-established in the trial record" and could
have been raised on direct appeal but were not.[178]

      The Second Circuit has held that a dismissal by a New York state
court under section 440.10(2)(c) constitutes an adequate and independent state
ground for a state court's rejection of a habeas petitioner's claim.[179]  Thus, federal
courts are precluded from reviewing such claims.  Because the court dismissed

---

[175]    *See* Petition at 17-18.

[176]    *See id.*

[177]    *See* 7/15/05 Decision and Order, Ex. 16 to Resp't Br.

[178]    *See Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003).

[179]    *See Davis v. Mantello*, 42 Fed. App'x 488, 490 (2d Cir. 2002) ("The
unjustifiable failure to raise on direct appeal a claim that appears on the face of the
record is a procedural default under New York law and therefore constitutes an
independent and adequate state ground for the state court's rejection of the
petitioner's claim."); *Hardison v. Artus*, No. 06 Civ. 0322, 2006 WL 1330064, at
*9-10 (S.D.N.Y. May 16, 2006).

Stover's section 440.10 claims on these grounds, they are procedurally barred unless Stover can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[180]  Stover does not allege cause, prejudice or a fundamental miscarriage of justice.  Accordingly, Stover's remaining ineffective assistance of trial counsel claims are procedurally barred from habeas review and should be denied.

H.     **Stover's Remaining Claims are Procedurally Barred**

The Appellate Division, Second Department dismissed Stover's remaining claims — grounds (7), (8), (9), and (10) — as unpreserved for appellate review.[181]  This constitutes an adequate and independent state ground for dismissal barring federal habeas review.  The Second Department's holding was clear on its face and Stover has failed to make a showing of cause and prejudice for his procedural default.  Thus, Stover's remaining claims are denied as procedurally barred.

V.     **CONCLUSION**

For the foregoing reasons, Stover's section 2254 petition is denied.

---

[180]     *Coleman*, 501 U.S. at 750.

[181]     *See People v. Stover*, 36 A.D.3d 837, 838 (2d Dept. 2007).

38

The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[182]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[183]  Petitioner has made no such showing.  Accordingly, I decline to grant a certificate of appealability.   The Clerk of the Court is directed to close this petition (docket # 2) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 8, 2011

---

[182]    28 U.S.C. § 2253(c)(2).

[183]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

40

**-Appearances-**

**Plaintiff (Pro Se):**

Jeffrey Stover
#02-A-4188
Greenhaven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

**For Defendants:**

John James Sergi
Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10552
(914) 995-4457

41